Citation Nr: 1710345 
Decision Date: 03/31/17 Archive Date: 04/11/17

DOCKET NO. 12-23 490 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent for a right foot disability prior to October 5, 2009.

2. Entitlement to a rating in excess of 10 percent for a left foot disability prior to October 5, 2009.


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

J. L. Burroughs, Associate Counsel



INTRODUCTION

This matter is on appeal from a December 2005 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri. Jurisdiction over the appeal is currently with the RO in Atlanta, Georgia. 

In December 2015, the Board denied entitlement to individual ratings in excess of 10 percent for bilateral foot disabilities, prior to October 5, 2009. The Board also dismissed the Veteran's claims for individual ratings in excess of 20 percent for bilateral foot disabilities, from October 5, 2009. Lastly, the issues of entitlement to a total disability rating based on individual unemployability (TDIU) and increased ratings for bilateral knee disabilities and an acquired psychiatric disorder were remanded for further development. 

Thereafter, the Veteran appealed his denial to the Court of Appeals for Veterans Claims (Court). In October 2016, the Court issued an order granting a May 2016 Joint Motion for Partial Remand (JMPR). The JMPR indicated that except for the Veteran's denied claims, the Board's December 2015 decision would remain undisturbed. Pursuant to the JMPR, these matters are once again before the Board.

That said, the Veteran's claim for a left foot disability has been recharacterized. As will be detailed below, service connection for a left foot disability was originally granted a noncompensable rating following a July 1972 RO rating action. In light of this procedural history, the pending claim is not one for entitlement to an increased initial rating, but rather a claim for entitlement to an increased rating. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994); see also Fenderson v. West, 12 Vet. App. 119 (1999). This change is reflected on the title page of the decision.

Correspondingly, as stated, the Veteran's remaining claims for entitlement to increased ratings and entitlement to a TDIU were remanded by the Board in December 2015. At that time, the Board directed the RO to issue Statements of the Case (SOC) for each claim. Review of the record establishes that the RO issued an SOC addressing his low back and knee claims in December 2016. The Veteran did not perfect his appeals. Therefore, the Board does not have jurisdiction over these claims. With regard to his TDIU and acquired psychiatric claims, an SOC has yet to be issued. However, as the Veterans Appeals Control and Locator System (VACOLS) indicates that the RO is in the process of issuing rating actions the Board will not disturb these issues.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. For the period prior to October 5, 2009, the Veteran's right foot disorder has been characterized by pain and some limitation of motion; however it has not been shown to have surgery, ankylosis, "marked" limitation of motion of the ankle, malunion of the os calcis or astragalus with "marked" deformity, malunion or nonunion of the metatarsal or metatarsal bones that is "moderately severe" in nature, flatfoot, weak foot, pes cavus, metatarsalgia, hallux rigidus, hammertoe or a nonspecific foot injury that is "moderately severe" in nature.

2. For the period prior to October 5, 2009, the Veteran's left foot disorder has been characterized by pain and some limitation of motion; however it has not been shown to have surgery, ankylosis, "marked" limitation of motion of the ankle, malunion of the os calcis or astragalus with "marked" deformity, malunion or nonunion of the metatarsal or metatarsal bones that is "moderately severe" in nature, flatfoot, weak foot, pes cavus, metatarsalgia, hallux rigidus, hammertoe or a nonspecific foot injury that is "moderately severe" in nature.


CONCLUSIONS OF LAW

1. The criteria for an initial rating in excess of 10 percent for a right foot disability prior to October 5, 2009, have not been met. 38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107 (West 2015); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.10, 4.14, 4.40, 4.45, 4.59, 4.71, 4.71a, DCs 5270-74, 5276-5284 (2016).
2. The criteria for a rating in excess of 10 percent for a left foot disability prior to October 5, 2009, have not been met. 38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107 (West 2015); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.10, 4.14, 4.40, 4.45, 4.59, 4.71, 4.71a, DCs 5270-74, 5276-5284 (2016). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. While the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran).

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the Veteran. Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. When all the evidence is assembled, the Board is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990).




Duties to Assist and Notify

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016).

The Veteran's right foot claim arises from his disagreement with the initial rating following the grant of service connection. Once service connection is granted, the claim is substantiated. Therefore, additional notice is not required and any defect in notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

As to his left foot claim, the duty to notify has been met. See March 2005 VCAA letter. The Veteran has not alleged prejudice with regard to notice and no such notice deficiencies were identified in the JMPR. The Federal Court of Appeals has held that "absent extraordinary circumstances...it is appropriate for the Board and the Veterans Court to address only those procedural arguments specifically raised by the veteran...." See Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). In light of the foregoing, nothing more is required.

The Veteran has also been afforded adequate assistance in response to his claim. His pertinent service treatment records, VA Medical Center and private treatment records have been obtained. Since the JMPR, the Veteran has not identified any outstanding evidence, to include medical records, which could be obtained to substantiate the claim. The Board is also unaware of any outstanding evidence. 

Furthermore, the Veteran has been provided an appropriate VA examination in 2005. The Board finds this examination to be adequate for adjudication purposes and the Veteran has not challenged its adequacy. Recognition is given to the fact that the Veteran's 2005 VA examination did not specifically address his active/passive motion or weight-bearing information. 38 C.F.R. § 4.59 (2016); Correia v. McDonald, 28 Vet. App. 158 (2016). 

However, in this instance, the Board finds that a remand to obtain a retrospective opinion on the factors set forth in Correia is not warranted. A remand is not necessary as it would merely impose additional burdens on VA with no benefit flowing to the Veteran. See Soyini v. Derwinski, 1 Vet. App. 541 (1991) (finding that strict adherence to requirements in the law does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case; such adherence would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the veteran); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (holding that remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the veteran are to be avoided). 

Specifically, any opinion obtained by VA would be asking an examiner to resort to speculation as to what active and passive motion, in weight-bearing and nonweight-bearing, were in 2005 (over a decade ago). Comparatively, the evidence of record already contains sufficient information to ascertain the Veteran's functionality during the pertinent period on appeal. The record contains range of motion results from the 2005 VA examination. Additionally, although weight-bearing is not specifically noted, the examiner did specify that pain was present while the Veteran was resting, standing, and walking. Finally, the Board's below determination as to the proper rating is predicated on the overall effects of his disabilities in relation to his ability to engage in motion. The collective evidence of record contains the pertinent information allowing VA to adjudicate the disability under the necessary rating criteria. 

In light of the foregoing, the Board finds that no further notice or assistance is required to fulfill VA's duty to assist in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).




Laws and Regulations

Disability evaluations are determined by the application of a schedule of ratings, which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. Part 4 (2016). Separate diagnostic codes identify the various disabilities. 38 C.F.R. Part 4 (2016). When there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2016). Any reasonable doubt regarding the degree of disability is resolved in favor of the veteran. 38 C.F.R. § 4.3 (2016).

In general, when an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco, 7 Vet. App. 55, 58 (1994). When the appeal arises from an initial assigned rating, consideration must be given to whether staged ratings should be assigned to reflect entitlement to a higher rating at any point during the pendency of the claim. See Fenderson, 12 Vet. App. 119 (1999). However, staged ratings are appropriate for an increased rating claim, if the factual findings show distinct time periods where the service-connected disability exhibited symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007). 

Separate disabilities arising from a single disease entity are to be rated separately. 38 C.F.R. § 4.25 (2016); see also Esteban v. Brown, 6 Vet. App. 259, 261 (1994). Pyramiding-the evaluation of the same disability or the same manifestations of a disability under different diagnostic codes-is to be avoided when rating a veteran's service-connected disabilities. 38 C.F.R. § 4.14 (2015).

The Veteran's service-connected right heel muscle sprain and fractured left calcaneus disabilities are accorded individual 10 percent disabling ratings under Diagnostic Code 5284. Pursuant to Diagnostic Code 5284, moderate residuals of foot injuries are rated 10 percent disabling; moderately severe residuals of foot injuries are rated 20 percent disabling; and severe residuals of foot injuries are rated 30 percent disabling. A Note to Diagnostic Code 5284 provides that foot injuries with actual loss of use of the foot are to be rated 40 percent disabling. 38 C.F.R. § 4.71a.

The Board notes that, Diagnostic Code 5284 does not apply to the eight foot conditions (e.g. nonunion of the tarsal bones, hallux rigidus) that are specifically listed under § 4.71. See Copeland v. McDonald, 27 Vet.App. 333, 338 (2015). 
The Court has also held that the plain meaning of the word "injury" limits the application of Diagnostic Code 5284 to disabilities resulting from actual injuries to the foot, as opposed to disabilities caused by, for example, degenerative conditions (thus rejecting Appellant's argument that DC 5284 is a "catch-all provision" and holding that the Secretary's interpretation of "injury" was entitled to deference). See Yancy v. McDonald, 27 Vet. App. 484 (2016). However, unlisted foot conditions may still be rated under Diagnostic Code 5284 by analogy. Id. 

For disabilities evaluated on the basis of limitation of motion, VA is required to apply the provisions of 38 C.F.R. §§ 4.40, 4.45, pertaining to functional impairment. The Court has instructed that in applying these regulations VA should obtain examinations in which the examiner determined whether the disability was manifested by weakened movement, excess fatigability, incoordination, or pain. Such inquiry is not to be limited to muscles or nerves. These determinations are, if feasible, to be expressed in terms of the degree of additional range-of-motion loss due to any weakened movement, excess fatigability, incoordination, flare-ups, or pain. DeLuca v. Brown, 8 Vet. App. 202 (1995); see Johnston v. Brown, 10 Vet. App. 80, 84-5 (1997); 38 C.F.R. § 4.59 (2006); see also Mitchell v. Shinseki, 25 Vet. App. 32 (2011); cf. Powell v. West, 13 Vet. App. 31, 34 (1999); Hicks v. Brown, 8 Vet. App. 417, 421 (1995); Schafrath v. Derwinski, 1 Vet. App. 589, 592 (1991).

The possible manifestations of functional loss include decreased or abnormal excursion, strength, speed, coordination, or endurance (38 C.F.R. §§ 4.40), as well as less or more movement than is normal, weakened movement, excess fatigability, and pain on movement (as well as swelling, deformity, and atrophy) that affects stability, standing, and weight-bearing (38 C.F.R. § 4.45). See Mitchell, supra.
The normal ranges of motion of the ankle are 20 degrees of dorsiflexion and 45 degrees of plantar flexion. 38 C.F.R. § 4.71a, Plate II (2016).

Factual Background

The RO granted service connection, with a noncompensable rating, for the Veteran's left foot disability in July 1972. See July 1972 Disallowance Form and December 2005 Rating Decision. In December 2005, the RO issued a rating decision increasing his left foot rating from non-compensable to 10 percent. The RO also granted service connection for his right foot disability and rated the disability at 10 percent. Both ratings were made effective February 24, 2005, the Veteran's date of claim. In relevant part, thereafter, the RO granted individual 20 percent ratings for his bilateral foot disabilities, effective October 5, 2009, his VA examination date. See November 2009 Rating Decision.

That said, during the year prior to the Veteran's claims VA records note bilateral foot pain and warm intact skin. He was negative for antalgic gait or posture. See 2004 Lake City VAMC records. Private treatment records dated in 2004 simply note plantar reflexes were "flexor." See Dr. G. E. Jenkins, Jr. DC, PA August 2004 records.

In May 2005, the Veteran indicated that his ankle caused his "foot to "pop," making such a sound while walking." See Statement in Support of the Claim.

On November 2005 VA examination, he reported pain, weakness, stiffness, fatigability and lack of endurance involving both heels. He specified that his left foot was worse than his right. He reported symptomology while at rest, standing, walking and attempting to sleep. Treatment was over-the-counter medication every other day. Flare-ups were reported to occur every day with severe pain lasting 3 to 4 hours and moderate pain constantly. The Veteran asserted additional limitation of motion and functional impairment during the flare-ups. He reported difficulty climbing stairs and an inability to jog or engage in prolonged standing/walking for exercise.

Physical examination was negative for surgery, calluses, problems with range of motion (ROM) of the bilateral toes, flatfoot, skin or vascular changes, hammertoes or high arches. Inserts were present, but the Veteran reported minimal effectiveness. Mild hallux valgus was also present bilaterally. He was able to stand, do squatting, supination, pronation, rise on toes and rise on heels with difficulty. The examiner noted he was unsteady doing these movements. Pain was reported throughout the ROM of the bilateral ankles and heels; however it was noted worse on the left than right. Upright posture and steady gait were maintained.

Goniometer measurement of the bilateral ankles revealed dorsiflexion 10 degrees, reduced to 8 degrees after repetitive use. Plantar flexion 30 degrees reduced to 25 after repetitive use. Painful motion with tenderness and weakness were present throughout the ROM. There was additional limitation by pain, fatigue, weakness and lack of endurance following repetitive use and during flare-ups throughout the range of motion process. Such was not quantified. Diagnostic testing revealed mild hallux valgus deformities, mild flexion deformities and osteoarthritis of the interphalangeal joints and cuneiform metatarsal articulations. In concluding, the examiner diagnosed "muscle, sprain with status post injury both feet and fracture left calcaneus with moderate loss of range of motion and moderate loss of functional capacity both feet."

In his November 2006 notice of disagreement, the Veteran reported constant pain since service. He indicated the associated pain and tenderness limited his ability to stand and walk. He reported "rotating or moving [his] feet" to lessen his symptomology. He also noted that his "shoe lifts" actually worsened his symptoms. Thereafter, in May 2007, he indicated that his "rating should be at least "moderately severe" because of his increased pain. See VA Form 9.

The remaining treatment medical records in evidence support his reports of continuous heel and foot pain. See October 2006 through July 2010 VAMC Montgomery and Dublin records.



Analysis

As stated, the Veteran is currently rated as 10 percent disabled under diagnostic code 5284 for his right and left foot disabilities. However, the Board will first address the diagnostic codes which are not appropriate for application. With regard to diagnostic codes pertaining to the foot, the record is silent for diagnoses of flatfoot, weak foot, pes cavus, metatarsalgia, hallux rigidus, malunion or nonunion of the metatarsal bones and hammertoe. As such Diagnostic Codes 5276, 5277, 5278, 5279, 5281, 5282 and 5283 are not for application. 

Although hallux valgus is noted in the 2005 VA examination, application of Diagnostic Code 5280 does not support a higher or separate compensable rating.
Unilateral hallux valgus that is severe, if equivalent to amputation of great toe, or that has been operated upon with resection of metatarsal head is rated 10 percent disabling. The Veteran's symptomology was specifically noted as mild, not severe, and the examiner explicitly indicated he had not undergone foot surgery. 

The Board has also considered other potentially applicable codes for an increased rating. With regard to diagnostic codes pertaining to the ankle, the record is silent for evidence that would establish an increased rating. Diagnostic Codes 5270 and 5272 require the presence of ankylosis, which is defined as immobility and consolidation of a joint due to disease, injury, or surgical procedure. See Lewis v. Derwinski, 3 Vet. App. 259 (1992). Review of the record is negative for diagnosis, or symptomology akin to ankylosis. Notably, immobility and consolidation were not shown on VA examination as the Veteran had ROMs of 8 degrees of dorsiflexion and 25 degrees of plantar flexion. Finally, Diagnostic Codes 5273 and 5274 are also inapplicable as the record is silent for malunion, nonunion or an astragalectomy.

What remains for consideration is a rating in excess of 10 percent under the ankle Diagnostic Code 5271 and the foot Diagnostic Code 5284. Diagnostic Code 5271 provides for a 20 percent rating for "marked" limitation of motion. Comparatively, Diagnostic Code 5284 notes a 20 percent rating is warranted for other foot injuries which are "moderately severe" in nature. The terms "moderate" and "marked" are not defined in VA regulations, rather the Board must arrive at an equitable and just decision after having evaluated the evidence. 38 C.F.R. § 4.6 (2016). 

In this regard, the JMPR indicated that "the Board...failed to provide an explanation as to why the potentially favorable range of motion findings more closely approximated the "moderate" criteria opposed to the "marked" criteria under DC 5271." The Board was directed to "provide an adequate statement of reasons or bases that fully explains the basis of any finding regarding the characterization of the limitation in range of motion of [the Veteran's] right and left feet as identified by the evidence of record." After contemplation of the record, the Board finds that the evidence does not support a rating in excess of 10 percent under either code. 

The Board acknowledges that on VA examination the Veteran's ankle ROM was roughly half of what is normal. Nevertheless, the examiner classified his overall limitation of motion as "moderate." There was also no indication on examination, or in the record, that the Veteran's limitation of motion was so severe as to preclude his activities of daily living. Instead, the record suggests that although his ankles were at times a hindrance, his day-to-day mobility remained intact. Significantly, the severity of his ankle impairment is best reflected by his ability to maintain mobility without the need to wear or be prescribed ankle braces. 

Similarly, the evidence of record does not support that his foot injuries were "moderately severe." Consideration has been given to the Veteran's complaint of pain in his feet while resting, standing and sitting. Nevertheless, treatment records and lay statements clearly indicate the Veteran maintained day-to-day mobility. He was also able to treat his symptoms with only over the counter medicine. Moreover, the VA examiner explicitly indicated that notwithstanding his symptomology the Veteran's functional capacity remained "moderate" for both feet. In light of the evidence of record, the Board finds that a rating in excess of 10 percent under Diagnostic Codes 5271 or 5284 is not warranted.

The Board emphasizes that it has considered the Veteran's reports of functional limitations and symptomology, to include pain. However, the objective evidence does not support a finding that the Veteran's service connected right and left foot pain and other symptoms have been associated with such additional functional limitation as to warrant increased compensation pursuant to the provisions of 38 C.F.R. §§ 4.40, 4.45, or the holding in DeLuca. To that extent, the Veteran's reported symptomology was directly incorporated with in the decision to maintain his 10 percent rating.

In this regard, the Board notes that the Veteran is competent to report symptoms of his bilateral foot disabilities. See Barr v. Nicholson, 21 Vet. App. 303 (2007); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Layno v. Brown, 6 Vet. App. 465 (1994). Additionally, he is credible in his reports of symptoms and their effect on his activities. He is not however competent to identify a specific level of disability of his disabilities according to the appropriate diagnostic code. Such competent evidence concerning the nature and extent of the Veteran's service-connected disabilities has been provided by a medical professional who examined him and considered the entirety of the claims file. The Board finds the examination report, in conjunction with the clinical evidence of record, should be accorded greater weight than the Veteran's subjective complaints of increased symptomatology. See Cartwright v. Derwinski, 2 Vet. App. 24, 25 (1991). Lastly, consideration has been given to assigning a staged rating; however, at no time during the period in question has the disability warranted a higher schedular rating. Fenderson, 12 Vet. App. 119 (1999).

Extraschedular Consideration

Consideration has been given as to whether the Veteran is entitled to a greater level of compensation on an extra-schedular basis for the appeal period. See 38 C.F.R. § 3.321 (b)(1). Ordinarily, the VA Schedule will apply unless there are exceptional or unusual factors, which would render application of the schedule impractical. An exceptional or unusual disability picture occurs where the diagnostic criteria do not reasonably describe or contemplate the severity and symptomatology of a veteran's service-connected disability. Thun v. Peake, 22 Vet. App. 111, 115 (2008). If there is an exceptional or unusual disability picture, the Board must consider whether the disability picture exhibits other factors such as marked interference with employment and frequent periods of hospitalization. Id. at 115-116. When those two elements are met, the appeal must be referred for consideration of the assignment of an extra-schedular rating; otherwise, the schedular evaluation is adequate, and referral is not required. Id. at 116.

There is no evidence to indicate that the Veteran's disability picture was so exceptional as to not be contemplated by the rating schedule. Rather, his disability pictures were adequately contemplated by the schedular rating criteria. The evidence does not indicate that his disability picture could not be adequately contemplated by the applicable schedular rating criteria discussed above. Specifically, the Board has reviewed all of his relevant symptoms related to the issues on appeal, and concludes that there are no symptoms that were not able to be addressed by the applicable diagnostic codes. See Mittleider v. West, 11 Vet. App. 181 (1998). Moreover, in view of the Board's responsibility to consider functional loss when assigning the appropriate rating for musculoskeletal disorders, the applicable diagnostic codes are already interpreted so broadly such that it is virtually impossible that any potential symptom would not be contemplated. See DeLuca, 8 Vet. App. at 202. As such, the Veteran's symptoms are not which are so unusual that they are outside the schedular criteria and referral to the appropriate VA officials for extraschedular consideration is not necessary for this issue

Furthermore, even if the Board were to find that the Veteran's disabilities were not adequately contemplated by the rating schedule, his disabilities did not exhibit the other related factors required for referral for consideration of an extraschedular rating, including marked interference with employment or frequent periods of hospitalization. There was no evidence that he was frequently hospitalized, or hospitalized at all, for his disabilities. With regard to marked interference with employment, he has reported difficulty with some aspects of particular jobs. However, there was no objective evidence to support a finding of marked interference with employment due to his foot disabilities such to require referral for extraschedular consideration. Note, the Board makes no determination as to the collective, or individual, effect of the Veteran's service connected disabilities on his employability. Such a question pertains to the grant of TDIU, and that issue remains before the RO for adjudication.

The Board acknowledges that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

In short, the evidence does not support the proposition that the Veteran's service-connected foot disabilities presented such an exceptional or unusual disability picture as to render impractical the application of the regular schedular standards and to warrant the assignment of an extraschedular rating under 38 C.F.R. § 3.321 (b)(1) (2016). Thus, referral of this issue to the appropriate VA officials for consideration of an extraschedular evaluation is not warranted.


ORDER

An initial rating in excess of 10 percent for a right foot disability prior to October 5, 2009, is denied.

A rating in excess of 10 percent for a left foot disability prior to October 5, 2009, is denied.


____________________________________________
MICHAEL A. HERMAN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs